This is 4090733, The People v. Nicholas Hamlin. We have for the appellant, Scott Sabin, and for the appellee, John Teepee. Mr. Sabin. May it please the court, counsel, Mr. Hamlin. Nicholas Hamlin has been on probation since June 29, 2007. He was sentenced to 24 months for violation of an order of protection. He was sentenced to 180 days jail, subject to remission. He was also ordered to complete a domestic victim impact panel for domestic violence counseling, ordered to pay a fine, and undergo a sex offender evaluation and treatment. While the underlying violation that he pled guilty to, violation of order of protection, was not a sex offense, at the time he pled guilty, there was pending in McLean County a child pornography case against him for a variety of reasons. That case was dismissed, and the recommendation and the agreement that he undergo a sex offender evaluation and treatment was made at court of this plea agreement. So his original sentence was 30 months of probation and 180 days in county jail as a condition? 24 months, Your Honor, was the original sentence. He was sentenced to 24 months probation. And I apologize, in my appendix, what I included was the new order of probation that he had been sentenced to after he had been violated. That's the 30 months? And that is the 30 months, that's correct. The order that preceded it sentenced him to 24 months. And what's very important about that particular order is that he was very specific that he undergo a sex offender evaluation and treatment. Is that an appropriate sentence for this offense? Is that authorized by statute? I don't know whether it's an appropriate sentence or not, other than it was an agreement that the prosecution had made with the defendant and his defense counsel. Under the circumstances, given the fact that there was a child pornography case pending at the time, regardless of whether they could prove it or not, everybody agreed and the judge approved that that would be an appropriate condition of the sentence. Where it gets murky, I don't believe it's murky at all, was he required to complete sex offender counseling within that 24 months. The fact of the matter is Nicholas Hamlin met and complied with each and every condition of his order of probation during that 24 month period, with except completing sex offender counseling. In great part, this case rests on whether he was required, whether Nicholas Hamlin was required to complete sex offender counseling within that 24 months that he was placed on probation. Time and time again, I think there were at least two or three remission hearings where Judge Renard, at the trial court below, actually commented to Mr. Hamlin that he had been doing excellent and exemplary in completing and complying with the terms and conditions of his probation. There was a remission hearing set for December of 2008, which was continued and didn't occur until July 2008, approximately one year after his initial sentence. The original order said he was to undergo sex offender evaluation and treatment? Yes, it does. And in your judgment, that meant that he could show up as he thought appropriate? I wouldn't be so cavalier as to say that he could show up when appropriate, but I think under the facts and circumstances of this case, he made reasonable efforts and complied with that requirement. Well, the question is, what was the requirement? That's the first question before we decide whether he complied with it. The requirement is that he receive a sex offender evaluation. He did that. He did that in a timely manner. That was done by the time of his remission hearing in July of 2008. And treatment? What's that requirement? What does that mean? I believe there are cases that comment on what completion means and whether that is even an appropriate requirement with respect to sex offender treatment. There was testimony by… Well, he was ordered to undergo sex offender evaluation and treatment. Is that correct? Yes, he was. So he underwent the evaluation? Yes. Did he undergo the treatment? Yes. And it's your position he didn't have to complete it. If he just undergoes treatment, is he…is he fit, I guess, or what? Well, in this case, Your Honor, he was undergoing treatment. He was in compliance. He was doing everything that was required of him. And I don't believe that there was any basis for finding that there was a willful violation of the conditions and orders of probation at that time. There had been some delays in his originally getting into treatment. And those delays don't amount to a willfulness, is what I argue. And Judge Raynard basically, even in his June 22nd order and in previous remission hearings, says that he's not violating Mr. Hamlin for his failure to complete treatment, but rather he terms it in or tries to phrase it in terms of his lack of diligence and argues that he wasn't diligent in getting into counseling. And the only reason he isn't completing counseling is because of that lack of diligence. And I would argue that Mr. Hamlin was anything but dilatory. He was diligent. And there is ample testimony. What's the standard review? Manifest way to the evidence. So we have to conclude that the trial court's reasoning and conclusions in this regard were essentially unreasonable? And I think they are unreasonable. I'll be happy to address them. On June 22nd, Your Honor, in his order, Judge Raynard writes, while it was not artfully articulated as to completion of the treatment, the plea agreement leaves no doubt that the defendant was ordered to complete treatment. That couldn't be further from the truth. And as evidence of that is there was a written plea agreement that is part of the common law record. The written plea agreement contemplates that there's a sex evaluation and treatment. It also requires that Mr. Hamlin undergo domestic violence counseling and specifically identifies a date certain that that is to be completed. And I think that is evidence that if he was to complete sex offender evaluation and treatment, that a date certain should have been enumerated as well. So for the judge to say that the completion of the treatment leaves no doubt that the defendant was ordered to complete it, I disagree. Well, the judge found apparently that the client acted as if he had been ordered only to attend some treatment and was left with the authority to decide when and under what circumstances he could decide not to attend further treatment. And I would ask the court to point to me anywhere in the record where the testimony and evidence supports that finding by the judge. Mr. Hamlin... He's moving around a lot. I'm sorry? He does make moves. Those moves are for financial reasons, and there's no evidence to suggest that those moves were to devoid himself from this process. Excuse me, Mr. Sabin, for interrupting. I'm going to read to you from the order for probation. It is hereby ordered that the defendant is sentenced to a term of probation for a period of 30 months upon the conditions that during said period the defendant shall undergo diagnosis and assessment for sex offense and shall provide proof of successful completion of all recommended treatment to the probation officer as directed. Yes, Your Honor. And that is the August 24, 2009. That's the second one. That's the second one. If you look, and I'm sorry I didn't make it as part of the appendix, but the original... It's a different order? It is a substantially different order, and in fact I will encourage the Court to look in the second order, paragraph L that you referred to, which talks about sex offense, is really a paragraph K in the earlier order of probation, and it doesn't speak to sex offense counseling whatsoever. It is absolutely silent. The only mention to sex offender treatment in counseling is the handwritten entry in the original order. And this judge, Judge Raynard, I argue, impermissibly enlarged the conditions in terms of probation when he violated Mr. Hamlin and then resentences him. So read to me the language in K. In K? Yes, the paragraph you said. The original... The original order for probation reads that he shall undergo diagnosis, assessments, and treatment for any medical or psychiatric condition, drug or alcohol addiction, or domestic violence, which is circled, as directed by the probation officer, and shall provide proof of successful completion of all recommended treatment to the probation officer as directed by December 20th of 07, which was his first remission hearing. There is no mention whatsoever of sex offense counseling. The only time that is mentioned is in a hand-marked, hand-checked box at the very end, which says the defendant shall attend a domestic violence victim attack panel by, and then right below that it says, sex offender evaluation and treatment. It doesn't provide for a date certain as to when that is. May I see the document? Is there any objection, Mr. Chivvy? No, Your Honor. We don't all get copies of the full record. Go ahead with your argument, Mr. Sabin. And that is part of the common law record that I cite to within my brief. So the second order, the judge figured out he has to do something to be more explicit. That's correct. And he makes his findings in his June 22, 2009 written order, and he acknowledges, while it was not artfully articulated as to completion of the treatment, the plea agreement leaves no doubt that the defendant was ordered to complete treatment. There was a written plea agreement that is also part of the common law record here. The written plea agreement laid out all of the terms, which specifically says sex offender treatment, or sex offender evaluation and treatment. Again, it doesn't provide for a date certain. That was the agreement that was entered into by the state and the defendant, and it is part of the record. And that was adopted. So if it's your position that the word complete or successfully complete is that part of it, then what was your client obligated to do? Undergo the evaluation, which she did, and undergo treatment. And he was actively undergoing treatment. And the court violated him because they didn't, basically was parsing words and phrases it in such a manner that he lacked diligence in the reason he wasn't completing his treatment. Undergo treatment could have meant showing up once. It could have. And the record, Your Honor, specifically identifies at the sentencing hearing that Mr. Hamlin, in this case, was really otherwise compliant with everything, even in the sex offender counseling. Well, your argument earlier was that he really intended to do everything to comply, but he had economic concerns, and as he was moving back and forth. But isn't that a question of fact that the trial court didn't know? It is, and I think the trial court didn't believe all of it. I think the trial court ignored it. I don't think it considered it at all. I think it paid it short shrift and absolutely didn't even consider it. That's another way of saying the court didn't believe it. The court heard it. The court heard it, and I think the court's findings are belied by the evidence and the testimony that was presented at the time of trial. The fact is Mr. Hamlin was in treatment at the time he was sentenced. He had already gone through 50 different sessions with Latino Family Services. He had complied with all of the homework. There were some recommendations that were made that he continue for 12 more months, and that falls completely in line with the McClellan case. You seem to be conceding that showing up once, which might fall under the definition of sex evaluation or sex offender treatment, wouldn't be sufficient. So the question is, what would have been sufficient, and how do we know, and what does that mean? I don't know how to answer that question. It's like pornography. If you see it, you know it, and you recognize it. I don't believe that... I think you have to look at these cases factually. I don't think there are any facts to support that Mr. Hamlin wasn't complying with the terms of his probation. Did we have the sentencing transcript? I believe you do, Your Honor. What was said to him at that time about the sex offender treatment? You're asking at the first sentencing? At the first. I don't know if that's part of the record or not, that transcript. I would presume it is, but the court was... I just don't know the answer to that question. I don't think it was addressed at all, or I think they would have acknowledged that, Your Honor. I think that the court, as they sometimes do, negotiated pleas are presented to the court, in this case a written plea agreement that was crafted and prepared by defense counsel and state's attorney and handed to the judge. I would presume normal admonishments were given, but I don't know that it was addressed at the time of sentencing. What could the trial court have done at that remission hearing? Was it a remission hearing or was it a probation revocation hearing? There were both. There were multiple remission hearings. On 8-24? On August 24, that was a sentencing hearing, and that was when he resentenced him to 30 months probation and wrote in Condition L, Complete All Recommended Treatment. Why couldn't he do that at that time? What I am arguing, Your Honor, is that there shouldn't have been a revocation to begin with. Mr. Hamlin was already in compliance. I don't believe the state committed the burden by a preponderance. I think the judge's findings are against the math that's weighted the evidence. When he does sentence him to this, I think he is impermissibly enlarging what the original sentence was and adding a condition to it. Can't the court do that? If you revoke probation, you can give the defendant any sentence he was originally subject to. Sure. Sure. So you're arguing that the trial court should not have found that he violated the conditions of his probation? That's correct. Thereby subjecting himself to resentencing. That's correct. But the resentence was, in fact, the same sentence, only with six more months of probation. Actually, 30 months more. Right. It was the original sentence. But from 24 to 30, and still with 180 days, and more talk about remission hearings ad nauseum. That is correct. And Mr. Hamlin is set to go to court again tomorrow on a remission hearing, which is all boils. And he's in a trick box, Your Honor, and I think I may have even referred to that. The counseling, the treatment requires that he admit to certain conduct, and that's basically where he falls short. Well, we're not there at this point. There's no issue here about admit or don't admit like those cases decided claim. The question here is, did he show up sufficiently to complete it as the court thought was necessary? And the court was smart enough to craft its order in a way that he didn't say, I ordered you to complete it successfully. He says, I am finding you in violation of the order of condition because of the lack of diligence that you showed in undergoing your evaluation, waiting for five months. And then basically he did not, the court did not buy the argument that I can't complete my counseling because you've delayed. And what I'm arguing is that that was not willful where the court had made those findings, and that's belied by the evidence. You earlier mentioned that this was, these were terms that were part of the plea agreement submitted to the court by the parties? Yes. And the condition being that he undergo sex offender evaluation and treatment? Yes. Is he in a strange position now to argue that the language that he suggested to the court was unclear in so far as, gee, I didn't know what I was required to do, what it says, undergo sex offender treatment? I think the court has an obligation to make sure that the terms are clear, and if it doesn't, I think the rule of one of the applies in these types of cases. I think that it is basically a contract that exists between the state and the defendant, and if there's an ambiguity, it's viewed in favor of the defendant in this case. And when you look at this case as a whole, your honors, he has been. This isn't an ambiguity coming from the court. This is an ambiguity coming at least 50% from the defendant. If you believe he was, I suppose that's correct. I'm not comfortable. Well, we know it might be 100% the defense attorney's language. It could be. I was not the trial attorney, and that's not part of the record. I think when you look at the case as a whole, all of the work that he has accomplished, if you look at all of the other terms and conditions of the case, and I believe I cite a Supreme Court case that says you have to look at everything he's done, that he falls woefully short of the woeful finding that Judge Maynard made. I have a question, Mr. Sabin. Have you forfeited this argument because you didn't appeal from the 8-2409 hearing when the judge first revoked him? That's when he put in that completion language. I think there was a motion for me to reconsider and then a timely motion to appeal that finding, your honor. Okay. I don't believe there were elections in that regard. Well, let me ask something else. It also says any and all fines, costs remain due and owing, as well as a violation of the probation. What are you referring to? I'm sorry. The order of August 24th. Any fines, costs, due and owing. He was also ordered to pay ongoing probation costs as part of his new sentence, and I think that's why that was added on there. But my understanding is that he did otherwise get in compliance. The only thing that he really had to complete differently was complete the sex offender counsel. Well, on two documents that Judge Maynard signed, it says any and all fines, costs remain due and owing. And then on the next one, it says all prior fines, costs remain due and owing. My understanding, your honor, and I stand corrected if the order says, the record reflects otherwise, is that he was ordered to pay an ongoing monthly probation fee, but there was no fine from the original sentence in the original order that remained due and owing, and I suspect it has to do with the ongoing monthly service fee and I want to make sure that he was in compliance with that. I doubt we'll be able to tell the answer from the record. I don't know. I'll look at it. So I assume my time is up. Thank you, Mr. Sabin. Mr. Teefy. May it please the court, counsel, Mr. Hamlin. My name is John Teefy. I'm here on behalf of the state. Defense counsel talked a lot about focusing on whether the original probation sentencing order required defendant to actually complete the sex offender evaluation and treatment. And I think it's pretty clear if you look at the actual language from the trial court when it revoked the probation, and like defense counsel said, he recognized, the trial judge recognized, as defense counsel said, that the order wasn't artfully written, as he would say. But I just want to read exactly when he revoked defendant's probation, what the trial judge said. He said completion, and he was, at this point, he was comparing this case to the two-sided cases in defense counsel's brief. Completion could have been made without the gold star of success or cure. And then he goes on to say, but to diligently make efforts to complete the treatment is a reasonable expectation of the court's order, notwithstanding its lack of artful expression. And to that extent, that wasn't made fully clear to the defendant at the time of the order. To that extent, the defendant has a reasonable complaint. But I think, on balance, it's been fairly well established that his conduct on probation in terms of his slow start is one that is the heart and soul of the violation. And I apologize on my brief. Do you know how long sex offender treatment normally, what's the normal course of sex offender treatment? I don't know exactly what the normal course is. Is it 24 months? Defendant was advised on June, shortly after the court accepted the terms of the plea agreement, defendant was advised by his probation officer that sex offender treatment could last two to three years. So a reading of the record shows that I don't think anyone in this case, I don't think defense counsel, the state, or the trial judge, or the probation officer had a reasonable expectation the defendant was actually going to complete all of his sex offender treatment in the 24-month probation. I don't think anybody had that expectation. So let me ask this question. Had he started the day after the entry of the first probation order? Yes. And had he not lost his job and had to go to Chicago and lose his job and come back to Bloomington and move back and forth, which I don't think anybody is saying is particularly unreasonable. You've got to have a job. And he goes 24 full months of sex offender treatment and doesn't finish, is he compliant with the probation? I believe he is. And I believe that's what the trial court is saying during the revocation hearing. He's saying that even if he had not fully completed it, gotten that sign of you completed this, he's saying that it is well established that his conduct on probation in terms of a slow start is one that is the heart and soul of the violation. So the trial court wasn't basing its violation, the defendant's violation on whether he had completed. He was basing his violation on the fact that he waited six months to even start the initial evaluation. So with that revocation hearing then in August, was there evidence presented as to when he would complete sex offender treatment? I don't believe there was, Your Honor. The court clearly ordered he completed at that point. Yes. And I believe at that point his probation officer's suggestion that it might take two to three years still carried over. Because in my understanding of the sex offender treatment and the evaluation and the subsequent treatment from the record, from the probation officer's testimony, was that you can't really say it's going to be different from each defendant. One defendant might take two years and another defendant might take three to three and a half years. Counsel, I don't understand your argument. You seem to be shifting dramatically from what the trial court said. The trial court found he had violated his probation conditions by not completing sex offender treatment. You've now apparently abandoned that. No, I'm sorry, Your Honor. The trial court loops here. No, I believe that the trial court's order, they clearly said that it doesn't make any sense to order sex offender evaluation and treatment. It doesn't make any sense to make that order if your goal isn't for completion. So the trial judge clearly stated that our goal is obviously for him to complete treatment. But the trial judge, in its revocation, said that it's not that he didn't complete it. If he would have made subsequent, diligent efforts into reaching that goal of completion, then I'm of the understanding, based on what the trial judge said, that his probation would not have been revocated. So I'm not saying that the ultimate goal, and I think it's the clear and reasonable goal of the probation order, was that the defendant complete. Well, why wouldn't the trial court just extend probation and not terminate probation and put him in the pulpy for 180 days? I mean, I think that's a great point. I think that they have the ability to do that. And I think that the trial judge, by resensing him to a new 30 days of probation, rather than doing that. 30 months. 30 months. I'm sorry, Your Honor. Gave him more time to complete it, which I think just shows the trial judge's goal, once again, that the ultimate goal is for completion. But even if he doesn't complete, if you're making reasonable efforts, if you're being diligent, if you're doing that stuff. But there were days in jail associated with that new order, wasn't there? There were. In which order, Your Honor? The second one. Yes. And it was still the 180 days stayed pending remission. But he had to do seven. I believe that – did he actually serve seven? I'm sorry, Your Honor. That was the first probation order. I think that was the first one. That was the first one. I beg your pardon. Okay. Well, you know, the court was commendable. Commendable candor says, well, it was not artfully stated, et cetera. This is pretty serious stuff. Why shouldn't we work? You're looking at a bench that's got about three decades or more worth of trial court experience. And we're familiar with the rigors of trial court work, but it's important stuff. When in doubt, why don't you say what you mean, Judge, and if you didn't say it, forget about it. If he failed to say he completed, why shouldn't we just say, what I've got to read you do? Yeah, I think the trial judge was – I think that he made those statements to kind of say, I realize I didn't say completed, and that's why I'm not going to hold you to the standard of completion. And I think that after I read what the trial judge said – Well, it sounds like he kind of was when he says, it was not artfully articulated as to completion of the treatment. There's no doubt that he was ordered to complete it. And even though I didn't say it, that's how I'm going to hold him accountable for it. So essentially, the trial court is finding he failed to complete his treatment. Is that what this is all about? Well, I think that – I mean, the trial – he clearly didn't complete his treatment. But I think the trial judge's language where he said that the heart and soul of this violation is his slow start. And the trial judge – I mean, he – from my understanding of what the trial judge said, I think he would agree that if this defendant, the day after his June 29th – that's the day that the court accepted the plea agreement – if he would have gone out after – well, I guess after he had met – he met with his probation officer soon after the plea agreement was accepted by the court. So in early July 2007, the defendant met with his probation officer. And she told him then that treatment took two to three years. And again, all the parties knew this. All the parties were aware that sex offender treatment could take two to three years. So no one was under the understanding that, barring him starting from day one and everything going perfectly, that he was actually going to complete this. And that's why – So you're undermining your own position. If you're arguing to us that the court didn't expect it, that's what the court said. That's what this finding is based upon. And then, I don't know what we're supposed to conclude here. The court said nothing about my finding in violation because he delayed starting for six months. That was neither the charge nor the petition to revoke, nor was it the findings of the court. Your Honor, I'm sorry that we're not on the same wavelength here, but the court's clear language that – I can't get around it. He says the heart and soul of the violation is his slow start. And so I believe that – Leading to why he didn't complete it. I'm sorry, Your Honor? Leading to why he didn't complete sex offender treatment. Leading to why he didn't make diligent efforts to the goal. Complete is the word I think the trial court used about ten times in the course of those two paragraphs. And I believe he says the order clearly established, and all parties agree, that you don't order sex offender treatment unless the ultimate goal is for that to be completed. And so I believe that's what the trial judge's order was. That's what the original order was, that you are to undergo sex offender evaluation and treatment. And naturally, common sense tells us that the goal of that treatment would be for it to be completed. And that's why he focuses on the fact that defendant waited so long to get the initial evaluation. And so if we look at the totality of the two years the defendant was on probation, he met with his probation officer in early of July 2007. She told him at that time in July that it could take two to three years. And she also advised him that he needed to get this evaluation fairly quickly. That's when defendant moved to Chicago for a job at Visa Now. He didn't go in to receive his evaluation until December 10th. So right there we have six months after his probation officer said to complete this program, which is our goal, to complete it, it could take two to three years. She said you need to get going quickly, and defendant waited until December 10th. And you can talk about that he moved to Chicago, and he did do those things, and those are commendable, and he needs a job. But even during that move, I do not believe that that necessitates the six-month delay in getting that evaluation. So the evaluation was received in December, and he underwent the evaluation from December to January. And then in April 2008 he went to a place called Kids Hope to get the evaluation. In April 2008, Kids Hope released the recommendations. And the delay was due to the defendant didn't pay a certain fee that he needed to to get that evaluation, and Kids Hope wanted some criminal records that they could not obtain. So that was the delay. I think there was like a three-month delay in releasing that evaluation. And they recommended that defendant undergo individual psychotherapy, and Chrisman, the probation officer, informed the defendant that the only place he could do that in Bloomington, which at this point he was back in Bloomington. He had gone up to Chicago and come back to Bloomington. The only place he could do that in Bloomington was Twin Cities. The defendant at that time informed his probation officer that I don't want to go to Twin Cities. I've been there before. I have a conflict of interest with one of the counselors. One of the counselors at Twin Cities had earlier turned him in, and called in the child pornography charges. So he didn't want to go there. And at that point, his probation officer said, okay, here's the name of another counselor at Twin Cities. And she also gave him the names of counselors in other places, other options, in Champaign, LaSalle, and Peoria. And that was in April of 2008. And then we skipped to July of 2008, which was the next remission hearing. And even after, from April to July, which is three more months, the defendant still had not gone to any of the recommended treatment that was recommended both by his probation officer and by Kids Hope. And then subsequent to that time, and the state is in agreement that subsequent to that time, the defendant has done a fairly commendable job at going to counseling, both at Twin Cities and at Latino Family Services in Chicago. But what the trial court did was they took, you know, the revocation hearing was held on June 29th, which is exactly 24 months, give or take a few days after the original plea agreement was accepted by the court. So in that two-year period, the court said, if I look at the totality of all this, I do not believe that the defendant, given the first 12 to 13 months of his probation, made reasonable, diligent efforts in achieving the goal of undergoing treatment. And if your honors have no further questions, that's all I have. Any questions? Mr. Tatum, do you have a question? Your honor, the only way the trial court could legitimately revoke the petition, or could revoke the order of petition of probation in this case, was if it... Actually, it's a minor point, Johnson, but really what we're talking about is making findings that conditions of probation were violated. I know it's called a petition to revoke, but that's just... I stand corrected. But the only way it can make this finding is by cloaking its decision in terms of Mr. Hamlin's lack of diligence in complying with the terms, in this case, of receiving treatment. Because he was otherwise, as opposing counsel says, was doing a commendable job at the time of the PTR, was attending sessions, and that's all acknowledged, even in the pre-sentence report. And the fact that the court cloaks this in terms of his lack of diligence, I find it offensive as a member of the court that they allowed Mr. Hamlin to continue the way he did for... Essentially, they could have filed the PTR in December because he waited until December to undergo an evaluation. That wasn't timely enough in the court's eyes. And they wait until the very last day of his probation to go forward. And while it certainly can do so, I think it's a bit disingenuous to say that he lacked diligence. The fact is he moved to Chicago on July 2nd. That was known to Ms. Christman, his probation officer, who could have said, I am not going to allow you to transfer probation to Chicago. She knew it. Part of the delay in Mr. Hamlin receiving his evaluation at Kids Help United was that police reports had to be provided to the evaluator. And those were to be provided by the McLean County Probation Department. And they didn't do it until sometime in March of 2008. So they have a hand in this. Is that in the record, counsel? I believe there's testimony to that effect. Yes. While I'm looking at your probation order as well as the subsequent probation order, I notice another discrepancy, which is he's given credit in the first order for 7 days served, and in the second order for 5 actual days served, they give him 10 days credit. I think that is correct. And he had also served an additional, there was a remission period in July of 2008 where he was sentenced to a weekend in jail. And at that time the court basically gave him, to use the court's language, a measured message to Mr. Hamlin that he couldn't take these matters into his own hand. And it was basically punishing him for the delay in beginning his treatment. So there was a prior revocation hearing? It was a remission hearing. He was sentenced to 180 days subject to remission. And the court basically took that to mean, I'm going to monitor you, and if I don't think you're making sufficient progress, I mean it's a moving goal line. That's time that you've already been sentenced to, and I can order that you serve it. And in July 2008, he was sentenced to serve a weekend in jail because he had not moved in a satisfactory manner, or didn't move at a satisfactory speed for purposes of undertaking his evaluation and treatment. My point is still the same. You need to make sure that he's given appropriate credit for his time served because he's only given 5 actual days in the subsequent order. And to the extent that he's entitled to credit, I would respectfully ask this court to consider that. Yes, I would like that he receive all appropriate credit. Finally, Your Honors, under the Supreme Court rule, I believe that I cite 366, you certainly have the discretion to render a judgment that is fair and equitable to the extent that I have foregone some arguments. No, I wasn't meaning to imply that, by the way, Mr. Sabin, just that we have these cases come back up later on on this issue. To suggest that he lacked diligence in the premise of the revocation on that, I think is belied by the facts of this case. He moved for employment purposes, which no one has contested. He applied for 500 different jobs. He was not fooling around and I think took this very seriously and continues to take this very seriously. Thank you, Mr. Sabin. We'll take this matter under advisement and recess until the next case.